STATE of Wisconsin, Plaintiff-Respondent,

v.

Zebelum SMITH, Defendant-Appellant.†

Court of Appeals

No. 01–1662–CR. *Submitted on briefs February 5, 2002.—Decided April 9, 2002.*

2002 WI App 118

(Also reported in 648 N.W.2d 15.)

† Petition to review denied 7-26-02.

654

657

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Erich C. Straub* of *Kachelski, Atta & Straub, S.C.*, of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Marguerite M. Moeller*, assistant attorney general, and *James E. Doyle*, attorney general.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. CURLEY, J. Zebelum Smith appeals from the judgment of conviction entered after a jury convicted him of second-degree sexual assault of a child, party to a crime, contrary to WIS. STAT. §§ 948.02(2) and 939.05 (1999–2000).[1] He also appeals from the trial court's order denying his postconviction motion for a new trial. Smith claims that the trial court violated his constitutional rights to confrontation, due process and compulsory process by excluding extrinsic evidence of the victim's alleged prior inconsistent statements. We disagree and affirm.

## I. BACKGROUND.

¶ 2. At the time of this incident, the victim was fourteen years old. She testified that on February 23, 2000, she was on her way to the corner grocery store when she saw an acquaintance, John Harris, along with two other individuals sitting in a car across the street from the store. John signaled for her to come over, and

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

she approached the car. John then asked her to run up to Smith's apartment, which was located near the store, to get some cigarettes from his brother, Albert Harris, whom she knew by the name of "Tweet." The victim agreed and went to the apartment.

¶ 3. The victim testified that she knocked on the front door of the apartment, which Smith answered. When she asked for Tweet, Smith signaled to a back bedroom. She went to the back bedroom, but the light was turned off and nobody was in the room. Then Smith entered the bedroom with three other men, Torrence Whitmore and two other men that she only knew by the names "Red" and "Black." Red then forced her down on the bed and began kissing her neck, while Black put his hands down her pants and put his finger in her vagina. She testified that Smith left the room as these two men continued molesting her, but that he later returned to the bedroom completely naked, touched his erect penis to her cheek, and told her to "kiss it." Albert Harris then entered the room, turned on the light, chastised the others, and escorted the victim out of the house. Although Whitmore was present during the entire incident, the victim testified that he never touched her.

¶ 4. After the incident, the victim gave three statements to the police regarding the activities on the night of February 23, 2000. The victim gave one statement to each of the following in order: Officer Peter Reichert, Detective Paul Leshok, and Detective Vickie Hall. During cross-examination of the victim, defense counsel questioned her regarding whether she had given a number of statements to the police, but never confronted the victim with any inconsistencies in those prior statements. However, Smith later attempted to introduce these statements as prior inconsistent state-

ments pursuant to Wis. Stat. § 906.13. The trial court excluded the statements, ruling that a proper foundation had not been laid pursuant to § 906.13 and, exercising its powers pursuant to Wis. Stat. § 906.11, determined that the victim could not be recalled, in order to avoid needless consumption of time and harassment.

## II. Analysis.

¶ 5. Smith first contends that the trial court erred by precluding the testimony of the law enforcement officers regarding prior statements made by the victim. He argues that because the requirements of Wis. Stat. § 906.13(2)(a)2 had been satisfied, the trial court erroneously excluded the evidence pursuant to Wis. Stat. § 906.11(1).[2] While we agree that Smith met the evidentiary requirements of § 906.13(2)(a)2, and that such

---

[2] Wisconsin Stat. § 906.13 provides:

**906.13 Prior statements of witnesses.**

. . . .

(2) Extrinsic evidence of prior inconsistent statement of a witness. (a) Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless any of the following is applicable:

1. The witness was so examined while testifying as to give the witness an opportunity to explain or to deny the statement.

2. The witness has not been excused from giving further testimony in the action.

3. The interests of justice otherwise require.

Wisconsin Stat. § 906.11 provides:

**906.11 Mode and order of interrogation and presentation.**
(1) Control by judge. The judge shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to do all of the following:

evidence may not be excluded merely by invoking § 906.11(1), we conclude that any error was harmless.

■■■■

¶ 6. "Few rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). In the exercise of this right, the accused must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. *See id.* Further, due process prohibits the trial court from applying the evidentiary rules so that critical defense evidence is excluded. *See State v. Sharlow*, 110 Wis. 2d 226, 233, 327 N.W.2d 692 (1983).

■■■■

¶ 7. Generally, the trial court's determination to admit or exclude evidence is a discretionary decision that will not be upset on appeal absent an erroneous exercise of discretion. *State v. Jenkins*, 168 Wis. 2d 175, 186, 483 N.W.2d 262 (Ct. App. 1992). However, in the present case, where the focus of the claim is on the constitutional right of a defendant to confront witnesses, the issue is one of constitutional fact. *See State v. Dunlap*, 2001 WI App 251, ¶ 17, 239 Wis. 2d 423, 620 N.W.2d 398 (stating that "a determination of whether the circuit court's actions violate the defendant's constitutional rights to confrontation and to present a

---

(a) Make the interrogation and presentation effective for the ascertainment of the truth.

(b) Avoid needless consumption of time.

(c) Protect witnesses from harassment or undue embarrassment.

defense is a question of constitutional fact"), *rev'd on other grounds,* 2002 WI 19, 250 Wis. 2d 466, 640 N.W.2d 112.

■

¶ 8. "This court has traditionally treated questions of constitutional fact as mixed questions of fact and law, and it has applied a two-step standard when reviewing lower court determinations of constitutional fact." *State v. Phillips,* 218 Wis. 2d 180, 189, 577 N.W.2d 794 (1998).

> [A]n appellate court reviewing issues of constitutional fact examines two determinations made by the circuit court, but applies a different standard of review to each. The circuit court first determines the evidentiary or historical facts relevant to the issue. The circuit court then applies those facts to resolve the constitutional questions.

> The standard of review by the appellate court of the trial court's findings of evidentiary or historical facts is that those findings will not be upset on appeal unless they are [clearly erroneous]. This standard of review does not apply, however, to the trial court's determination of constitutional questions. Instead, the appellate court independently determines the questions of "constitutional" fact.

*Id.* (citations omitted).

■

¶ 9. "The constitutional right to present evidence is grounded in the confrontation and compulsory process clauses of Article I, Section 7 of the Wisconsin Constitution and the Sixth Amendment of the United States Constitution." *State v. Pulizzano,* 155 Wis. 2d 633, 645, 456 N.W.2d 325 (1990). The Sixth and Fourteenth Amendments to the United States Constitution

and Art. I, § 7 of the Wisconsin Constitution assure criminal defendants the right to confront any witnesses against them.[3] The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him [and] to have compulsory process for obtaining witnesses in his favor . . . ." Article I, Section 7 of the Wisconsin Constitution similarly provides: "In all criminal prosecutions the accused shall enjoy the right . . . to meet the witnesses face to face [and] to have compulsory process to compel the attendance of witnesses in his behalf . . . ."

> The rights granted by the confrontation and compulsory process clauses are fundamental and essential to achieving the constitutional objective of a fair trial. The two rights have been appropriately described as opposite sides of the same coin and together, they grant defendants a constitutional right to present evidence. The former grants defendants the right to "effective" cross-examination of witnesses whose testimony is adverse, while the latter grants defendants the right to admit favorable testimony. The right to present evidence is not absolute, however. Confrontation and compulsory process only grant defendants the constitutional right to present relevant evidence not substantially outweighed by its prejudicial effect.

*Pulizzano*, 155 Wis. 2d at 645–46 (citations omitted).

¶ 10. When Smith attempted to call Officer Reichert to introduce the alleged inconsistent statements of the victim into evidence, the trial court and defense counsel had the following exchange:

---

[3] The confrontation right in the Sixth Amendment of the United States Constitution was made applicable to the states in *Pointer v. Texas*, 380 U.S. 400 (1965).

[THE COURT:] Do you have an offer of proof as to what Reichert would say?

[DEFENSE COUNSEL:] Yes. I am actually going to bring in the prior inconsistent statements. I do have [the victim] here again today under subpoena, so she would be available to be recalled.

. . . .

She is available right now, because she is here under subpoena. And so I believe that pursuant to 906.13, that because she is here, she has not been excused from giving further testimony in the action.

[THE COURT:] In examining [the victim,] you had the witness on the stand. You examined the witness . . . . What I'm saying is you could have done it under 906.13 when she was on the stand and when you ventured into your area of cross-examination regarding [the victim's] interaction with Reichert, but you chose not to go far enough. You could have done it, but you didn't.

. . . .

I'm exercising my authority under 906.11 . . . . We're going to avoid needless consumption of time, [and] I'm going to protect [the victim] from further harassment.

¶ 11. The trial court erred in two respects. First, because Smith satisfied the evidentiary foundation set forth in WIS. STAT. § 906.13(2)(a)2, we conclude that the trial court erred, as a matter of law, when it ruled that Smith was precluded from calling Officer Reichert to testify regarding the alleged prior inconsistent statement of the victim.

¶ 12. Although WIS. STAT. § 906.13(2)(a)1 states that "[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless . . . [t]he

664

witness was so examined while testifying as to give the witness an opportunity to explain or to deny the statement," § 906.13(2)(a)2 adds that extrinsic evidence of a prior inconsistent statement is admissible if "[t]he witness has not been excused from giving further testimony in the action." The Judicial Council Committee's Note to § 906.13 explains that § 906.13(2)(a)2 "modifies the 'prior warning' condition to extrinsic evidence of impeachment," in that "[t]he rule is . . . modified to eliminate the 'prior warning' condition where a witness has not been excused from further testimony." *See also* Wis. Stat. § 906.13(1) (stating that the statement need not be shown to the witness in examining that witness concerning the prior statement).

¶ 13. Thus, the trial court was clearly wrong in ruling that Smith had not established a proper foundation in order to introduce the alleged inconsistent statements under Wis. Stat. § 906.13(2)(a)2. A prior inconsistent statement is admissible under § 906.13(2) without first confronting the witness with that statement. Under § 906.13(2)(a)2 and 3, extrinsic evidence of prior inconsistent statements is admissible if the witness has not been excused from giving further testimony in the case, or if the interest of justice otherwise requires its admission. *See Ruiz v. State*, 75 Wis. 2d 230, 232–33, 249 N.W.2d 277 (1977). In the instant case, because Smith intended to introduce extrinsic evidence of alleged prior inconsistent statements of the victim – inconsistent with testimony that the victim had previously given – who was under subpoena, and, therefore, not excused from giving further testimony in the action, we conclude that such evidence is admissible pursuant to § 906.13(2)(a)2.

¶ 14. Second, the trial court incorrectly concluded that evidence that is admissible pursuant to WIS. STAT. § 906.13(2)(a)2 may be excluded merely by invoking WIS. STAT. § 906.11(1). Generally, § 906.11 allows the trial court control over the conduct of the trial, including, but not limited to, the extent of cross-examination, *see Neider v. Spoehr*, 41 Wis. 2d 610, 617–18, 165 N.W.2d 171 (1969), the form of questions, *see id.*, the admission or exclusion of exhibits, *see Shurpit v. Brah*, 30 Wis. 2d 388, 396–97, 141 N.W.2d 266 (1966), and sending exhibits to the jury room, *see Rodriguez v. Slattery*, 54 Wis. 2d 165, 172, 194 N.W.2d 817 (1972). The trial court's determination of these issues pursuant to § 906.11 is largely within its discretion and will not be disturbed unless the rights of the parties have been prejudiced. *See Dutcher v. Phoenix Ins. Co.*, 37 Wis. 2d 591, 606, 155 N.W.2d 609 (1968).

¶ 15. "[W]hile we agree that the evidentiary rule § 906.11(1) provides the circuit court with broad discretion in its control over the presentation of evidence at trial, that discretion is not unfettered." *Waters ex rel. Skow v. Pertzborn*, 2001 WI 62, ¶ 31, 243 Wis. 2d 703, 627 N.W.2d 497. Rather, WIS. STAT. § 906.11 "must give way where the exercise of discretion runs afoul of other statutory provisions that are not discretionary." *Id.* Here, WIS. STAT. § 906.13(2)(a)2 limits that discretion. In other words, § 906.11 does not trump § 906.13, because Smith satisfied the requirements of § 906.13(2)(a)2, which specifically controls the introduction of prior statements of witnesses. *See State ex rel. S.M.O. v. Resheske*, 110 Wis. 2d 447, 453, 329 N.W.2d 275 (Ct. App. 1982) (acknowledging the rule

that "where a general statute conflicts with a specific statute, the specific statute prevails").

¶ 16. Finally, however, although WIS. STAT. § 906.11 is not applicable, WIS. STAT. § 904.03 may provide an impediment to the receipt of evidence, including prior inconsistent statements under WIS. STAT. § 906.13. Section 904.03 requires that the trial court balance the probative value of the evidence against a number of other factors:

> **Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

When the trial court stated that it saw a need to "avoid needless consumption of time" and to "protect [the victim] from further harassment," it tacitly invoked § 904.03. In light of this, *see State v. Ralph*, 156 Wis. 2d 433, 438, 456 N.W.2d 657 (Ct. App. 1990) (stating that we may sustain a trial court's discretionary determination on a basis independent of that invoked by the trial court), and the following reasons, we conclude that the trial court's reliance on § 906.11 was harmless error, *see also State v. Zellmer*, 100 Wis. 2d 136, 150, 301 N.W.2d 209 (1981) (stating that errors of constitutional dimension are subject to harmless error analysis); *Crane v. Kentucky*, 476 U.S. 683, 691 (1986) (stating that even if the exclusion of evidence was a constitutional violation, the violation is subject to harmless error analysis).

¶ 17. WISCONSIN STAT. § 805.18(2) provides:

**805.18 Mistakes and omissions; harmless error.**

. . . .

**(2)** No judgment shall be reversed or set aside or new trial granted in any action or proceeding on the ground of selection or misdirection of the jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court to which the application is made, after an examination of the entire action or proceeding, it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse or set aside the judgment, or to secure a new trial.

WISCONSIN STAT. § 901.03 further provides:

**901.03 Rulings on evidence. (1)** EFFECT OF ERRONEOUS RULING. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected.

¶ 18. In *Martindale v. Ripp*, 2001 WI 113, 246 Wis. 2d 67, 629 N.W.2d 698, our supreme court explained the interplay of these two statutory sections in the harmless error analysis of evidentiary decisions:

An erroneous exercise of discretion in admitting or excluding evidence does not necessarily lead to a new trial. The appellate court must conduct a harmless error analysis to determine whether the error "affected the substantial rights of the party." If the error did not affect the substantial rights of the party, the error is considered harmless.

Two statutes govern this situation, WIS. STAT. § 901.03 (Rulings on evidence) and WIS. STAT. § 805.18(2) (Mistakes and Omissions; Harmless Error). Section 901.03 provides that error may not be predicated on a ruling that admits or excludes evidence "unless a substantial right of the party is affected." This

668

statute must be read together with § 805.18(2), which provides that a new trial shall not be granted for an error unless the error has affected the substantial rights of the party. This latter provision, which dates back to the early years of Wisconsin statehood, applies to both civil and criminal cases . . . .

For an error "to affect the substantial rights" of a party, there must be a reasonable possibility that the error contributed to the outcome of the action or proceeding at issue. A reasonable possibility of a different outcome is a possibility sufficient to "undermine confidence in the outcome."

*Id.* at ¶¶ 30–32 (footnotes omitted) (citations omitted); *see also State v. Dyess*, 124 Wis. 2d 525, 543–47, 370 N.W.2d 222 (1985); *Town of Geneva v. Tills*, 129 Wis. 2d 167, 184–85, 384 N.W.2d 701 (1986) (holding that that the harmless error analysis set forth in *Dyess* applies in both civil as well as criminal cases).

¶ 19. Smith asserts that each of the victim's prior statements to police is inconsistent with her trial testimony. Smith argues that he would have been able to establish that the victim made the following statements to Officer Reichert in contrast to her trial testimony: (1) Tweet invited her inside the house instead of Smith; (2) Red escorted her to the bedroom instead of Smith; (3) Smith fondled her breasts instead of Red; and (4) The light was on during the entire incident, rather than Tweet coming into the bedroom and turning on the light. With respect to the victim's statement to Detective Leshok, Smith highlights the following alleged inconsistencies with her trial testimony: (1) the victim stated that Smith answered the door rather than Tweet; (2) the victim stated that she walked to the bedroom after being directed by Smith rather than being escorted by Red; (3) Red fondled her breasts

669

rather than Smith; and (4) the victim gave a description of Smith to Detective Leshok that did not include any reference to his tattoos. Finally, Smith argues that because the victim did not disclose Whitmore's involvement until being confronted by Detective Hall, her statement to Detective Hall is inconsistent with her prior statements and her trial testimony.

¶ 20. "Even though there [may] be glaring discrepancies in the testimony of a witness at trial, or between his [or her] trial testimony and his [or her] previous statements, that fact in itself does not result in concluding as a matter of law that the witness is wholly incredible." *Ruiz*, 75 Wis. 2d at 232. Here, any error was harmless because the discrepancies between the victim's prior statements and her trial testimony were minor compared with the overall consistency of each of her accounts of this traumatic experience. *See id.* at 233 ("Discrepancy between the sequence of events recited at the preliminary and the sequence related at trial does not constitute a repudiation of the prior testimony, nor does it impel the conclusion that none of the testimony was believable."); *see also Fells v. State*, 65 Wis. 2d 525, 531, 223 N.W.2d 507 (1974) (holding that inconsistencies in victim's preliminary hearing testimony that her attacker had no mustache and had somewhat wavy or curly hair and her trial testimony that her assailant had a very thin mustache and that his hair was somewhat kinky and short were not so serious as to render her testimony patently incredible).

¶ 21. First, with respect to the victim's statement to Detective Hall, while the statement was inconsistent, or at least less complete, than her two prior statements to Officer Reichert and Detective Leshok, this statement is consistent with the victim's trial testimony, in

that in both instances she testified that Whitmore was present in the room but did not physically touch her. Therefore, the victim's statement to Detective Hall is not "a prior inconsistent statement." *See Shoemaker v. Marc's Big Boy*, 51 Wis. 2d 611, 618, 187 N.W.2d 815 (1971) ("Extrajudicial statements of a hearsay nature may be used to impeach a witness on the theory that one who gives testimony inconsistent with his prior statements is subject to having the truthfulness of both statements attacked.").

¶ 22. Second, regarding the victim's prior statement to Detective Leshok, the inconsistencies Smith identifies are between that statement and the victim's prior statement to Officer Reichert, not between her statement to Detective Leshok and her trial testimony. Again, this statement does not qualify as a prior inconsistent statement because it is consistent with the victim's trial testimony.

¶ 23. Third, and finally, with respect to the victim's statement to Officer Reichert, any inconsistency regarding who opened the front door and directed the victim to the bedroom is insignificant in light of the later sexual abuse by Smith. Further, any alleged benefit that Smith would have gained by revealing the inconsistency in the victim's testimony referring to who groped her breasts would have been outweighed by the prejudice caused by suggesting that Smith not only stuck his erect penis into the victim's face and told her to kiss it, but also that he, not Red, had groped and fondled the victim's breasts beforehand. Because these discrepancies did not affect the substance of the victim's testimony and Smith was not prejudiced by their exclusion, we conclude that the victim's trial testimony did not constitute a repudiation of her prior statements,

671

and, thus, Smith has failed to establish a reasonable possibility of a different outcome.[4]

*By the Court.*—Judgment and order affirmed.

---

[4] Alternatively, Smith claims that his defense counsel was ineffective for failing to confront the victim with her prior statements during cross-examination. However, because we have already concluded that Smith was not prejudiced by the exclusion of the prior statements, we also conclude that his defense counsel was not ineffective. *See Strickland v. Washington*, 466 U.S. 668, 697 (1984) (stating that if the defendant fails to establish either deficient performance or prejudice, we may conclude that counsel was not ineffective and need not address the other prong).