COURT OF APPEALS
DECISION
DATED AND FILED

March 9, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP753-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2018CF627

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

DONYA T. LEE,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: JOSEPH R. WALL, Judge. *Affirmed.*

Before Dugan, Donald and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Donya T. Lee appeals from the judgment entered after a jury found him guilty of first-degree sexual assault and battery, both while using a dangerous weapon.  Lee also appeals the order denying his postconviction motion.  He argues that:  (1) the information was improperly amended; (2) the circuit court erred when it allowed the jury to hear statements the victim, M.R., made to her cousin after she was physically and sexually assaulted; and (3) the circuit court relied on inaccurate information from a victim witness impact statement.  We reject each of Lee's arguments and affirm.

## BACKGROUND

¶2     M.R. met a man, later identified as Lee,[1] through a friend.  Lee picked M.R. up in Fond du Lac and they went to his brother's house in Milwaukee.  According to M.R., at the house, Lee became angry when another man looked at her.  Lee slapped M.R.'s face, pulled out a gun, showed her bullets with a "reddish" tip, and threatened to shoot her if she did it again.

¶3     After leaving the house, Lee drove M.R. to a hotel.  At the hotel, M.R. alleged that Lee forced her to have sex multiple times and slapped, punched, and pistol whipped her.

¶4     Lee eventually dropped M.R. off in Fond du Lac and she walked to her cousin's house.  She told her cousin, J.W., what had happened.  J.W. and a neighbor took M.R. to the hospital.  After waiting at the hospital for several hours,

---

[1]  M.R. identified Lee as her assailant in a photo array and in court.

M.R. left. Three days later, M.R. returned to the hospital.[2] The hospital reported the assault to the police.

¶5 Police went to the hotel and obtained a room registration card that had Lee's name on it, along with a copy of his driver's license. Police also obtained surveillance video, which showed a man walking into the hotel office, while a woman sat in the car. Lee admitted to the police that the man on the video was him.

¶6 Based on the police investigation, a search warrant was executed at Lee's residence. At his residence, police found an unloaded handgun and loose bullets with a "red or orange-type tip." In addition, police obtained from Facebook a series of one-sided messages from Lee to M.R.

¶7 The State initially charged Lee with first-degree sexual assault, while using a dangerous weapon. After the arraignment, the State filed an amended information adding a misdemeanor charge of battery, while using a dangerous weapon.

¶8 Four months after the amended information was filed, Lee went to trial. A jury found Lee guilty on both counts. The circuit court sentenced Lee to a total sentence of twenty-five years of initial confinement and ten years of extended supervision.

---

[2] M.R. told hospital personnel that she went with a friend to Milwaukee to meet a friend's boyfriend and the friend left her at a hotel. M.R. also said that she managed to escape when the person who assaulted her left to pick up his kids. M.R. admitted that she had lied to hospital personnel because she was "embarrassed." She did not want her cousin and neighbor to know the "real story" because they would have blamed her for putting herself in that situation and she did not want them to know that she "just stayed ... [and] did nothing about it."

¶9    Lee filed a postconviction motion requesting that the circuit court vacate his convictions and order a new trial, or in the alternative, a new sentencing hearing.  The motion challenged the amended information and the admission of the statements M.R. made to J.W.  The motion also argued that the court relied on inaccurate information in the victim impact statement, which was submitted prior to sentencing.

¶10    After briefing, the circuit court denied Lee's postconviction motion.  The court found that amending the information in this case did not constitute plain error and did not prejudice Lee.  The court also found that M.R.'s statements to J.W. were admissible under the excited utterance hearsay exception and any error in admitting the statements was harmless.  Additionally, the court rejected Lee's inaccurate information claims, finding that Lee failed to provide adequate documentation.

¶11    On appeal, Lee raises the same issues as in his postconviction motion.  Additional relevant facts will be addressed below.

## DISCUSSION

**I.    Amended Information**

¶12    WISCONSIN STAT. § 971.29(1) (2017-18)[3] provides that "[a] complaint or information may be amended at any time prior to arraignment without leave of the court."   Section 971.29 does not directly address the amendment of an information after arraignment, but "should be read to permit

---

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

4

amendment of the information before trial and within a reasonable time after arraignment, with leave of the court, provided the defendant's rights are not prejudiced, including the right to notice, speedy trial and the opportunity to defend." *Whitaker v. State*, 83 Wis. 2d 368, 372, 374, 265 N.W.2d 575 (1978).

¶13    On appeal, Lee challenges the amended information because: (1) the State did not file a formal motion with the circuit court seeking to amend the information; (2) the State did not provide any reasons for adding a new charge; and (3) the circuit court did not determine whether the late filing prejudiced Lee.

¶14    Lee, however, did not object to the amended information during the circuit court proceedings.  As a result, he forfeited his challenge to the amended information.  *See State v. Webster*, 196 Wis. 2d 308, 319, 538 N.W.2d 810 (Ct. App. 1995) (finding that the defendant's failure to timely and specifically object to the State's filing of an amended information forfeited the issue).[4]

¶15    To overcome forfeiture, Lee references the plain error doctrine. Plain error is "error so fundamental that a new trial or other relief must be granted even though the action was not objected to at the time." *State v. Jorgensen*, 2008 WI 60, ¶21, 310 Wis. 2d 138, 754 N.W.2d 77 (one set of quotation marks and citation omitted).

---

[4] Two different attorneys represented Lee during the circuit court proceedings.  In his reply brief, Lee argues that his failure to object should be "excusable" because there is "no indication" that either attorney knew about the amended information.  The amended information was filed on May 22, 2018.  Lee's first attorney did not withdraw until seven days later. Moreover, even if Lee's first attorney was not aware of the amended information, successor counsel acknowledged that an amended information had been filed and entered a not guilty plea on Lee's behalf.  Lee does not provide any explanation for why an objection could not have been made at that point.

¶16    Lee's plain error argument, however, is conclusory and undeveloped, and as a result, we decline to address it. *See Associates Fin. Servs. Co. of Wis., Inc. v. Brown*, 2002 WI App 300, ¶4 n.3, 258 Wis. 2d 915, 656 N.W.2d 56 (declining to address inadequately briefed issues as they were conclusory and undeveloped).

## II.    Excited Utterance Exception

¶17    At trial, over the objection of the defense, M.R.'s cousin, J.W., testified to statements M.R. made regarding what happened. According to J.W., M.R. said she was "held captive over the weekend," "they wouldn't let her leave," and "[t]hey took her phone." In addition, M.R. eventually said that "he had … wanted to have sex with her and she told him no that she didn't want to and then ... he ended up just taking it" and "[i]t wasn't just a one time thing, that it was multiple times over the weekend."

¶18    Lee argues that the circuit court erred in admitting this testimony under the excited utterance exception, and that the admission of the testimony was not harmless. We disagree.[5]

¶19    An excited utterance is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by

---

[5] The State asserts that the statements were also admissible as "prior inconsistent statements." In his reply brief, Lee does not address this argument, but merely says that it is being raised for the first time on appeal. We may, however, sustain a circuit court's discretionary evidentiary ruling on a basis different from that invoked by the circuit court. *See State v. Smith*, 2002 WI App 118, ¶16, 254 Wis. 2d 654, 648 N.W.2d 15 (citation omitted). By not refuting the State's argument, Lee has conceded this issue. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (finding that the failure to refute a proposition in a response brief may be taken as a concession).

the event or condition." WIS. STAT. § 908.03(2). A statement qualifies as an excited utterance if it meets three requirements: (1) "there must be a 'startling event or condition'"; (2) "the declarant must make an out-of-court statement that relates to the startling event or condition"; and (3) "the related statement must be made while the declarant is still 'under the stress of excitement caused by the event or condition.'" *State v. Huntington*, 216 Wis. 2d 671, 682, 575 N.W.2d 268 (1998) (citations omitted).

¶20    When reviewing out-of-court statements, we look to see whether the circuit court "exercised its discretion in accordance with accepted legal standards and in accordance with the facts of record." *Id.* at 680-81 (citation omitted). "If we can discern a reasonable basis for its evidentiary decision, then the circuit court has not committed an erroneous exercise of discretion." *Id.* at 681.

¶21    Lee does not appear to contest that the first two criteria for an excited utterance have been met. Rather, Lee argues that the statements were not made while M.R. was "under the stress of excitement caused by the event or condition."

¶22    Contrary to Lee's argument, the testimony reflects that M.R. was under the stress of excitement caused by the physical and sexual assaults she experienced. At trial, J.W. testified that she returned from work and found M.R. sitting on the couch. J.W. described M.R. as having a few bruises, a "knot" on her head, and a swollen lip with a tiny gash. J.W. further testified that M.R. was "flushed," looked scared, looked like she had been crying for a while, and appeared under distress.

¶23    Lee argues that there is a "timing" problem because M.R. testified that she was not physically or sexually assaulted on Sunday and it was not until

Monday that J.W. saw M.R. The timing element, however, "is measured by the duration of the condition of excitement rather than mere time lapse from the event or condition described." *Christensen v. Economy Fire & Cas. Co.*, 77 Wis. 2d 50, 85, 252 N.W.2d 81 (1977). "The significant factor is the stress or nervous shock acting on the declarant at the time of the statement." *Id.* As noted above, the record reflects that at the time of the statements to J.W., M.R. continued to be under the "stress" or "shock" of the assaults she experienced. Thus, we find that the circuit court did not err in admitting the statements under the excited utterance exception.[6]

¶24 Further, even if the statements were not properly admitted, any error was harmless. "The test for harmless error is whether there is a reasonable possibility that the error contributed to the conviction." *State v. Williams*, 2002 WI 58, ¶50, 253 Wis. 2d 99, 644 N.W.2d 919. "A reasonable possibility is a possibility sufficient to undermine our confidence in the conviction." *Id.*

¶25 Here, J.W.'s testimony was little more than a summary of M.R.'s testimony. J.W. testified that M.R. said she had been "held captive" over the weekend, was unable to leave, and was sexually assaulted multiple times. After J.W. testified, M.R. largely repeated the same allegations, but with greater detail. M.R. testified how she met her assailant, where they went, why she felt she was unable to leave, and how she was assaulted. Thus, any error in admitting J.W.'s

---

[6] In addition, Lee complains that the circuit court stated it would receive the statements "conditionally" and "if there is not anymore foundation, we will need to think about a jury instruction." However, after M.R. testified, Lee did not object based on a lack of foundation or request a jury instruction on this issue. As a result, Lee forfeited any argument in this regard. *See State v. Joseph P.*, 200 Wis. 2d 227, 233, 546 N.W.2d 494 (Ct. App. 1996) (holding that appellant forfeited his objection when the circuit court invited him to renew an objection at trial and he failed to do so).

testimony was harmless. *See **Huntington***, 216 Wis. 2d at 695-96 (holding that the admission of hearsay testimony was harmless because the victim "repeated essentially the same allegations").

¶26 In addition, strong evidence was presented corroborating M.R.'s testimony. At trial, the evidence included, but was not limited to, a registration card with Lee's name on it along with a copy of his driver's license from the hotel, video surveillance showing Lee enter the hotel while a woman remained in his car, Facebook messages from Lee to M.R., testimony from J.W. that M.R. had a knot on her head, bruises, and a swollen lip, and testimony that a gun and distinctive bullets matching M.R.'s description had been found in Lee's residence. Thus, we conclude that any error in admitting J.W.'s testimony was harmless.

## III. Inaccurate Information

¶27 "A defendant has a constitutionally protected due process right to be sentenced upon accurate information." ***State v. Tiepelman***, 2006 WI 66, ¶9, 291 Wis. 2d 179, 717 N.W.2d 1. Whether a defendant was denied that right is a constitutional question that is reviewed *de novo*. ***Id.***

¶28 To prevail on an inaccurate information claim, a defendant must show that the information was inaccurate and that the circuit court relied on inaccurate information at sentencing. ***State v. Travis***, 2013 WI 38, ¶¶21-22, 347 Wis. 2d 142, 832 N.W.2d 491. The defendant must prove both components by "clear and convincing evidence." ***State v. Payette***, 2008 WI App 106, ¶46, 313 Wis. 2d 39, 756 N.W.2d 423.

¶29 Lee argues that there were three inaccuracies in the victim impact statement, which was filed prior to sentencing. According to Lee: (1) M.R.'s

claim that she has ongoing issues as a result of being hit in the head with a gun was "false or exaggerated"; (2) M.R. only had one venereal disease, not three; and (3) the trauma M.R. suffered was not solely due to Lee but may also have been due to a prior sexual assault. In support, Lee repeatedly refers to "the complete hospital record" and police reports—neither of which are in the record.

¶30 The State argues that Lee has forfeited these arguments by failing to object at sentencing. We agree. At the beginning of the sentencing hearing, Lee objected to statements in the presentencing investigation report. Lee did not, however, object to the victim impact statement, which had been filed approximately one month in advance of sentencing. *See* **State v. Benson**, 2012 WI App 101, ¶17, 344 Wis. 2d 126, 822 N.W.2d 484 (finding that the defendant forfeited an inaccurate information claim by failing to object or correct the information).

¶31 In response to the State's argument, Lee does not argue that the victim impact statement was a surprise or that he did not have access to M.R.'s "complete hospital record" or the police reports prior to sentencing. *Cf.* **State v. Counihan**, 2020 WI 12, ¶4, 390 Wis. 2d 172, 938 N.W.2d 530 (holding that a defendant's failure to object does not result in forfeiture when "previously unknown information" is raised at sentencing). Rather, Lee suggests that trial counsel could not object because she was prohibited from "discuss[ing] M.R.'s past sexual assault history." While trial counsel agreed not to question M.R. about her past sexual assault history during trial, there was no such discussion or ruling regarding sentencing. Further, as Lee notes, at sentencing, a circuit court "may appropriately conduct an inquiry broad in scope and largely unlimited either as to the kind of information considered or the source from which it comes." *See id.*, ¶43 (citation omitted).

¶32 Finally, even if Lee's arguments are not forfeited, his arguments are conclusory and not supported in the record. As noted above, to support his claims that M.R.'s statements were inaccurate, Lee repeatedly refers to M.R.'s "complete hospital record" and the police reports—neither of which are in the record. *See Fiumefreddo v. McLean*, 174 Wis. 2d 10, 26-27, 496 N.W.2d 226 (Ct. App. 1993) (stating that the appellant is responsible for ensuring that the record is complete and "when an appellate record is incomplete in connection with an issue raised by the appellant, we must assume that the missing material supports the trial court's ruling"). Therefore, because Lee's arguments are conclusory and not supported by the record, we decline to consider them further. *See State v. Pettit,* 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (declining to address arguments when the appellant cited to a transcript not part of the record and presented undeveloped arguments).

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

11